RUFUS L. TAY & others *vs.* ALBERT W. LADD & others.

If a partner buys a chattel for his private use, and agrees to pay for it in goods to be delivered by his firm on the order of the seller, and the firm is changed by the addition of a new member, but continues the business of the old firm in the old place, and subsequently the goods are delivered according to the agreement, the firm cannot maintain an action for the price of the goods, though the other members of the firm were ignorant of the agreement.

ACTION OF CONTRACT for coal sold and delivered to the defendants. At the trial in the superior court at January term 1859, before *Nash*, J., the defendants contended that the coal was delivered to them in payment of a piano delivered to Downs, one of the plaintiffs, pursuant to an agreement with him to that effect; and that they were liable for so much only of the plaintiffs' claim as exceeded the price of the piano.

The defendants introduced evidence that on the 26th of April 1856 they made a contract with Downs to let him have a piano, and take pay in coal, for which they were to give their orders on the firm of H. Langley & Co., consisting of Langley and Downs, two of the plaintiffs; and, pursuant to that agreement, delivered the piano to Downs, and subsequently, through the summer and autumn, sent their verbal and written orders, addressed to H. Langley & Co.; that H. Langley & Co. on the 3d of May 1856 took Rufus L. Tay into partnership with them, forming a new firm, under the style of Rufus L. Tay & Co., the plaintiffs, which occupied the same place of business as Langley & Co., and succeeded to and carried out their business and engagements; that the defendants had no knowledge of the accession of Tay to the firm of Langley & Co.; that on the 12th of June their first order for coal, addressed as stipulated to H Langley & Co., was sent to the place of business of Langley & Co., (then, without the defendants' knowledge, occupied by Tay & Co.,) which order was filled by the plaintiffs; and the coal then and subsequently ordered was received by the defendants in payment of the piano, in pursuance of the contract with Downs; that coal was ordered beyond the price of the piano,

according to encouragement originally held out to Downs to give Langley & Co. the defendants' further patronage; that the partners of Downs knew of his purchase of the piano, and his arrangement to pay for it; that Downs had paid other private debts in the same way; that Langley had done the same, but had always paid his individual debts by discharging partnership claims; that it was the practice of the firm to set off partnership against individual debts; but that there was no contract to that effect; and that such settlements had not been objected to in the partnership settlements.

The plaintiffs introduced evidence that Langley and Tay had no knowledge of the contract which Downs had made with the defendants, but delivered coal on orders addressed to H. Langley & Co.; and that the plaintiffs sent, with each load of coal, a ticket of the weight, on which were printed the words " from R. L. Tay & Co.," and these tickets were delivered at the places where the coal was delivered.

The judge instructed the jury, " that if there was an agreement and general understanding among the plaintiffs, partners, express or implied from their acts and general course of transacting business, that each partner might pay his individual debt with partnership property, and in pursuance of said agreement and understanding Downs caused the coal to be delivered to the defendants in payment of the piano, the plaintiffs could not recover the price of the coal so delivered in payment; and that if, in pursuance of an agreement between the defendants and Downs, that he was to pay for the piano in coal, on orders drawn by the defendants on Langley & Co., the defendants in good faith drew the orders and received the coal in payment of the piano, then the plaintiffs could not recover the price of the coal so delivered in payment."

The plaintiffs asked the court to instruct the jury that, if the contract alleged by the defendants was not known to or assented to by Tay and Langley, it did not bind them, and the defence set up by the defendants could not prevail. But the judge instructed the jury, " that if Downs made the contract with the defendants to pay for the piano in coal, and procured

the coal to be delivered, in pursuance of the contract, in payment for the piano, and it was so received by the defendants in payment, acting in good faith, then it was not material whether the other partners knew of the existence of the contract or not."

The jury returned a verdict for the plaintiffs for the admitted balance only, and the plaintiffs alleged exceptions.

*D. E. Ware,* for the plaintiffs.

*A. A. Ranney,* for the defendants.

DEWEY, J. The present case is one more clear for maintaining the defence than that of *Homer* v. *Wood,* 11 Cush. 62. There the debt to the partnership was discharged by the application of the same by one of the copartners to the discharge of a private demand which the defendant had against such copartner. Here the defence goes to the original contract for the articles alleged to have been sold by the copartners, and shows that they were originally contracted for by the defendants only as in payment for an article sold to one of the partners. The orders were drawn in the precise manner agreed, and were duly honored by the delivery of the coal. As respects the firm of Langley & Co. as it existed at the time of the contract, there could be no possible question as to this defence.

The change in the firm by the introduction of the new partner, Tay, cannot under the circumstances affect the defendant. He had no knowledge of it. He drew his orders on the old firm by its appropriate name, and acted throughout in ignorance of the change of the firm. The evidence tends to show that the new firm occupied the place of business of Langley & Co., and succeeded to and carried out the business and engagements of Langley & Co. The fact that Tay had no personal knowledge of the arrangement under which the coal was delivered cannot affect a defendant acting in good faith, or preclude him from the defence upon which he now relies.

The instructions of the court furnish no ground for sustaining any exceptions thereto.     *Exceptions overruled.*